UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WANDA F. FELTER,

    Plaintiff,

v.                                    Case No. 1:18-cv-254

                                       Hon. Robert J. Jonker

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for supplemental security income (SSI).

Plaintiff alleged a disability onset date of January 15, 1999. PageID.321. Plaintiff identified her disabling conditions as: (1) manic depression; (2) lower back problems; (3) post traumatic stress disorder (PTSD); (4) stomach problems; (5) memory problems; (6) neck problems; (7) back pain; (8) recurrent scar tissue and cysts in left abdominal area; (9) ovary problems (hysterectomy); (10) colitis; (11) diverticulitis; (12) high blood pressure (HBP); (13) heart problems; (14) chronic obstructive pulmonary disorder (COPD); (15) comprehension problems; (16) back problems (pinched nerves, bulging discs and arthritis); (17) sleeping problems, nightmares, can't sleep; (18) irritable bowel syndrome (IBS); (19) "throw up a lot;" and (20) headaches. PageID.326. Prior to filing the present application for SSI, plaintiff earned a GED

and had past work as an assembler in a factor, car washer/dryer, nurse aide, packager in a factory, and waitress. PageID.328.

Although plaintiff alleged a disability onset date of January 15, 1999, she did not apply for benefits until many years later. The Administrative Law Judge (ALJ) summarized plaintiff's previous applications:

> The claimant filed one prior application for supplemental security income and one prior application for a period of disability and disability insurance benefits. The prior application for supplemental security income was filed on May 10, 2011. The claim was initially denied on August 12, 2011. The prior application for disability insurance benefits was filed on November 30, 2007 and initially denied on April 7, 2008. No appeals were filed. Reopening of the prior applications is not applicable because no new and material evidence has been submitted.

PageID.56.

Defendant outlined the procedural history of this matter as follows:

1. In June 2013, Plaintiff applied for supplemental security income payments, alleging disability beginning on January 15, 1999. On October 21, 2014, after a hearing, an ALJ found Plaintiff was not disabled under the Act.

2. In May 2016, the Appeals Council remanded the case to an ALJ, so that Plaintiff's migraines and mental impairments could be further considered, and a third-party statement from her son could be evaluated.

3. On November 22, 2016, Plaintiff appeared at the second administrative hearing before ALJ James Kent, with a non-attorney representative, and testified along with a vocational expert.

4. On January 13, 2017, the ALJ found that Plaintiff was not entitled to disability benefits because she was not disabled within the meaning of the Act.

5. The ALJ's decision became final on December 11, 2017, when the Appeals Council denied Plaintiff's request for review.

Defendant's Brief (ECF No. 13, PageID.932) (citations omitted).  Accordingly, this review involves plaintiff's claim for SSI based on her application filed in June 2013.[1]

## I.  LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence.  42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).   A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only.  This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).  The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits.  A disability is established by showing that the claimant cannot engage in substantial

---

[1] The Court notes that plaintiff filed two "initial briefs".  *See* ECF Nos. 11 and 12. The Court will view the second brief  as the operative document in this case.

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since her application date of June 24, 2013. PageID.58. At the second step, the ALJ found that plaintiff had the following severe impairments: anxiety disorder; affective disorder; degenerative disc disease of lumbar and cervical spine; migraines; obesity and IBS. PageID.58. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.60.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that the claimant can never climb ladders, ropes or scaffolds. She can occasionally climb stairs or ramps, balance, stoop, kneel, crouch or crawl. The claimant is limited to perform simple routine repetitive tasks. She can tolerate few, if any changes in the work setting, and cannot perform production rate paced work.

PageID.62. The ALJ also found that plaintiff has no past relevant work, noting that she has not engaged in substantial gainful activity in the last 15 years. PageID.66.

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at the light exertional level in the national economy. PageID.66-67. Specifically, the ALJ found that plaintiff could perform the requirements of light and unskilled

occupations in the national economy as follows: inspector (75,000 positions); office cleaner (100,000 positions); and ticket seller (80,000 positions). *Id*. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from June 24, 2013 (the date the application was filed) through January 13, 2017 (the date of the decision). PageID.67.

### III.   DISCUSSION

Plaintiff has raised four issues for review.

#### A.   The ALJ erred in his evaluation of the medical evidence

In her initial brief, plaintiff sets forth the definition of a severe impairment and notes that the Sixth Circuit has recognized "that fibromyalgia can be a severe impairment." Plaintiff's Brief (ECF No. 12, PageID.923). Plaintiff also states that "the [ALJ's] decision is devoid of any mention of fibromyalgia in its entirety despite Dr. Thakur continuing to note it as a diagnosis" and that she meets the "2010 criteria for fibromyalgia." *Id*. at PageID.923. Plaintiff apparently contends that the ALJ failed to identify fibromyalgia as a severe impairment at step two and that "as a result of the ALJ's oversight, the ALJ's subjective symptom analysis is flawed and warrants remand." *Id*. at PageID.922-924.

Defendant construed plaintiff's argument as an error for failing to identify fibromyalgia as a severe impairment at step two. Defendant's Brief (ECF No. 13, PageID.935-936). In her reply brief, plaintiff stated that defendant's "analysis of Plaintiff's fibromyalgia was erroneous" and that "Plaintiff is not asserting error at Step Two." Reply Brief (ECF No. 14, PageID.950). Plaintiff modified her claim to state that "the ALJ ignored an entire line of evidence completely in the decision and it clearly adversely impacted the ALJ's subjective symptom

6

analysis where the focus was on objective medical evidence as well as the ALJ's ultimate residual functional capacity ("RFC")." *Id*.

The Court construes plaintiff's claim as raising two related errors: (1) the ALJ failed to identify fibromyalgia as a severe impairment; and (2) the ALJ failed to consider fibromyalgia in evaluating her subjective symptoms. A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). Upon determining that a claimant has one severe impairment the ALJ must continue with the remaining steps in the disability evaluation. *See Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244 (6th Cir. 1987). Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ fails to classify a separate condition as a severe impairment does not constitute reversible error. *Maziarz*, 837 F.2d at 244. An ALJ can consider such non-severe conditions in determining the claimant's residual functional capacity. *Id*. "The fact that some of [the claimant's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008).

Here, at step two, the ALJ summarized plaintiff's medical history since April 2011 and concluded that she had six severe impairments: anxiety disorder; affective disorder; degenerative disc disease of lumbar and cervical spine; migraines; obesity and IBS. PageID.58-60. In reaching this determination, the ALJ reviewed plaintiff's treatment with Dr. Thakur since August 2012, which included the doctor's diagnoses and reflected conservative treatment of plaintiff's conditions with medication. PageID.59.

7

Plaintiff points out that Dr. Thakur included fibromyalgia as one of her diagnoses as early as April 2014. *See* PageID.923. However, plaintiff does not identify any testing (e.g., tender point testing) performed by any doctor to confirm the diagnosis. *Id.* At most, plaintiff has presented a diagnosis of fibromyalgia. The mere diagnosis of a condition says nothing about the severity of the condition. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). *See Hill v. Commissioner of Social Security*, 560 Fed. Appx. 547, 551 (6th Cir. 2014) ("disability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it").

Furthermore, plaintiff's claim that she suffers from disabling fibromyalgia has been waived because neither plaintiff nor her representative identified fibromyalgia as a disabling impairment prior to filing this appeal. While plaintiff's disability report identified 20 allegedly disabling conditions, *see supra*, she did not include fibromyalgia as one of those conditions. PageID.326. Plaintiff's representative's pre-hearing brief dated September 19, 2014, did not refer to fibromyalgia. PageID.361. At the administrative hearing on September 26, 2014, plaintiff testified that she had a variety of problems (migraine headaches, severe neck pain, lower back pain, really bad stomach pain, problems with her knees and legs, and a real problem with depression). PageID.99. However, plaintiff did not identify fibromyalgia as one of those problems. While plaintiff's representative's post-hearing memorandum dated September 28, 2014 raised an issue regarding a medical expert's review of the evidence, it did not mention fibromyalgia. PageID.362-363. Because plaintiff never identified fibromyalgia as the basis for her disability claim, it is understandable why the ALJ's 2014 decision did not address fibromyalgia as a severe impairment. PageID.139.

In addition, the Appeals Council's Order remanding the case to the ALJ did not address a claim of fibromyalgia.  That order, entered on May 5, 2016, directed the ALJ: to further evaluate plaintiff's "mental limitations" (i.e., affective disorder and anxiety disorder) and RFC; to evaluate the functional limitations caused by plaintiff's migraine headaches and how the RFC accounts for those functional limitations; to evaluate a third-party statement from plaintiff's son ("who reported that the claimant lays around crying about pain, stays in her pajamas all the time, does not go to any public place on a regular basis and generally does not have a social life"); to give further consideration to the claimant's RFC;  to give further consideration to the third-party statement pursuant to SSR 06-3p and "explain the weight given to such opinion evidence"; and "[i]f warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base."  Appeals Council Order at PageID.153-154.

On remand, plaintiff's representative did not raise the issue of fibromyalgia in her pre-hearing memorandum to the ALJ.  PageID.378-379.  At the administrative hearing held on November 11, 2016, plaintiff identified at least six medical conditions (COPD, pain, nausea, pain in the back and neck, migraine headaches).  PageID.83, 86-88. However, she did not include fibromyalgia among those conditions.  An updated medication list dated November 11, 2016 did not include any medication for fibromyalgia.  PageID.384.  Finally, plaintiff's representative's post-hearing memorandum to the ALJ did not address fibromyalgia.  PageID.385.

In summary, neither plaintiff nor her representative raised fibromyalgia as an impairment during the administrative agency proceedings.  Accordingly, plaintiff's claim that the ALJ erred by failing to address her diagnosis of fibromyalgia has been waived.  "It is axiomatic

that a court should not consider an argument that has not been raised in the agency proceeding that preceded the appeal." *Maloney v. Commissioner of Social Security*, 480 Fed. Appx. 804, 810 (6th Cir. 2012).  *See Glenn v. Secretary of Health & Human Services*, 814 F.2d 387, 391 (7th Cir.1987) ("When an applicant for social security benefits is represented by counsel the administrative law judge is entitled to assume that the applicant is making his strongest case for benefits.").[2]  Accordingly, plaintiff's claims of error should be denied.

### B. The ALJ erred in evaluating plaintiff's mental impairments at Step Three, in the residual functional capacity (RFC) and the weight assigned to medical opinions

Plaintiff has presented a number of cursory arguments under the rubric of these claims of error.  Plaintiff's claims include: that a consultative examination "essentially supported a finding of disability" but the ALJ only gave it partial weight; that "the ALJ's mental RFC is simply contrary to the records he relies upon;" that the ALJ played doctor; that "[t]he ALJ's analysis of the opinion evidence is flawed and contrary to the substantial evidence in this record;" that "the ALJ's selective review of this record to reach his desired outcome is flawed and not supported by substantial evidence;" that the ALJ contradicted the record when he found that plaintiff exhibit no problems at the Field Office interview; and that "[t]he severity of Plaintiff's mental impairments either singly or in combination should indeed meet or medically equal the criteria of 12.04 or 12.06."  PageID.910-912.

Plaintiff has not developed arguments to support her claims that the ALJ erred in evaluating the listed impairments at step three or in evaluating the mental RFC.  While plaintiff

---

[2] While plaintiff's representative was not an attorney, she acted in that capacity throughout the administrative proceedings. *See Kidd v. Commissioner of Social Security*, 283 Fed. Appx. 336, 344-45 (6th Cir. 2008) ("[F]ederal regulations permit claimants to choose non-attorneys to represent them at the administrative level. *See* 42 U.S.C. § 406(a); 20 C.F.R. § 404.1705(b).")

contends that "[t]he severity of Plaintiff's mental impairments either singly or in combination should indeed meet or medically equal the criteria of 12.04 or 12.06", she does not explain how plaintiff's conditions meet the criteria of those listings.  In addition, while plaintiff contends that "the ALJ's mental RFC is simply contrary to the records he relies upon", she does not address how that RFC (i.e., "The claimant is limited to perform simple routine repetitive tasks. She can tolerate few, if any changes in the work setting, and cannot perform production rate paced work.") is incorrect or not supported by substantial evidence.   Finally, plaintiff's other cursory arguments fail to establish any error.  Accordingly, plaintiff's errors should be deemed waived.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

        **C.**    **The ALJ's evaluation of plaintiff's subjective symptoms is not supported by the record**

Plaintiff's main claim is that the ALJ improperly evaluated her subjective symptoms because he failed to address her claim of fibromyalgia.  As discussed in § III.A, *supra*, plaintiff's SSI claim never involved a claim that she suffered from a disabling impairment of fibromyalgia.  Accordingly, plaintiff's claim that the ALJ erred by failing to address fibromyalgia as one cause of her subjective symptoms should be denied.

Plaintiff's other claims regarding the ALJ's failure to address subjective symptoms are without merit.  While plaintiff contends that "[t]he ALJ's subjective symptom analysis is contrary to SSR 12-2p and SSR 16-3p and warrants remand," she does not identify the relevant requirements set forth in those SSR's or explain how the ALJ's analysis failed to meet those requirements. Plaintiff also takes issue with portions of the ALJ's credibility determination, stating that "[t]o the extent the ALJ asserts Plaintiff performed daily activities, this is likewise flawed."

11

PageID.927. The ALJ addressed plaintiff's credibility at length when determining her RFC. PageID.62-66. However, plaintiff does not address the ALJ's credibility determination in a meaningful fashion. In addition, while plaintiff states that "[t]he ALJ questions Plaintiff's drug-seeking behavior" she does not explain the relevance of the ALJ's finding (e.g., whether that finding led to an improper credibility determination). Rather, plaintiff attempts to justify this behavior by noting that she had pain, a long history of hospitalizations, and abdominal issues related to IBS which are symptoms associated with fibromyalgia. PageID.927-928. Accordingly, plaintiff's claims of error should be denied.

### D. The ALJ's analysis of the physical opinion evidence is flawed

Plaintiff contends that "the ALJ's physical RFC is not supported by substantial evidence and warrants remand" because: (1) the ALJ improperly found that she can perform light work; and (2) the RFC "makes no reference to Plaintiff's struggles with IBS and urgency/frequency". Plaintiff's Brief at PageID.928-929. RFC is a medical assessment of what an individual can do in a work setting despite the functional limitations and environmental restrictions imposed by all of the individual's medically determinable impairments. 20 C.F.R. § 416.945. It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c).

Plaintiff's argument is difficult to follow because she does not refer to the medical professionals by their names. Plaintiff refers to "[t]he CE from 2013" at PageID.546. Plaintiff's Brief at PageID.928. The cited report was a psychological examination prepared by consultative examiner Tim Strang, Ph.D. In his prognosis, Dr. Strang stated that "[c]laimant has a number of

12

physical issues that also impede her ability to sustain employment." PageID.546. This report is not "physical opinion evidence" because a psychologist does not have the expertise to testify regarding the extent of a claimant's disability due to physical limitations. *See Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001) (noting that psychologist is not qualified to diagnose a claimant's physical limitations).

Plaintiff also refers to "[t]he internal CE" at PageID.537. *Id*. The cited report was prepared by consultative examiner Michael Geoghegan, D.O. With respect to Dr. Geoghegan, plaintiff states that the doctor "did not provide a [sic] RFC but did note some difficulty getting on and off the examination table, heel and toe walking, squatting or hopping as well as fully gripping bilaterally". Plaintiff's Brief at PageID.928. While plaintiff stated that she had "some" difficulty, the doctor actually found that she had only "mild" difficulty:

> There is mild difficulty getting on and off the examination table, mild difficulty heel & toe walking, mild difficulty squatting, and mild difficulty hopping. There is 80% grip strength remaining bilaterally as tested grossly. The patient is able to pick up a coin, fasten a button, and open a door with either hand.

PageID.537. The doctor also found that plaintiff's "[m]otor and sensory function remains intact" and that her "[r]eflexes are present and symmetrical." *Id*.

In addition, plaintiff refers to "a second doctor" in 2016 at PageID.791. Plaintiff's Brief, PageID.928. This report was prepared by consultative examiner Tama D. Abel, M.D. on July 16, 2016 (PageID.787-792). Plaintiff also mentions "the CE" referred to by plaintiff's representative at PageID.78, and cites to one page of the report prepared by "[t]he CE" (PageID.787). Plaintiff's Brief, PageID.929. It appears that plaintiff is referring to Dr. Abel's July 16, 2016 report.

In determining plaintiff's severe impairments, the ALJ performed an extensive review of her medical history commencing years before plaintiff filed her SSI application set forth in pertinent part below:

> The claimant has history of diarrhea, and neck, back and abdominal pain. In September 2009, a magnetic resonance imaging (MRI) of the lumbar spine revealed early degenerative disc disease changes at L4-L5 and L5-Sl with small central annular tear at L4-L5 (Exhibit C13F). In April 2010, an MRI of the lumbar spine demonstrated disc herniation extraforminal [sic] left L3-L4 with mass effect on the waiting nerve, disc disease at L4-L5 and L5-Sl without definite nerve contact, and small left paracentral disc herniation at L4-L5 (Exhibit C6F). In June 2010, an electromyogram (EMG) of the upper extremities revealed likely left Sl radiculopathy, active and chronic; and cannot rule out a right S1 radiculopathy to the active and chronic changes noted in the right medial gastrocnemius muscle (Exhibit C32F). In June 2012, an MRI of the cervical spine demonstrated diffuse disc bulge ad uncove1iebral joint disease bilaterally with mild neural formainal [sic] bilaterally with uncovertebral joint disease and facet joint disease (Exhibit C6F). In February 2013, the claimant underwent colonoscopy, which revealed diverticulosis of the sigmoid colon, sigmoid colon polyps and internal hemorrhoids (Exhibit C5F).
>
> The claimant has had numerous emergency room visits due to abdominal pain. She was treated with medication and discharged in stable condition (Exhibits C16F, Cl 7F, C24F, C25F, C28F and C30F).
>
> Shekhar Thakur M.D., an internist, has treated the claimant since August 2012. Her diagnoses include obesity, migraines, irritable bowel syndrome and degenerative disc disease. She was treated conservatively with medication (Exhibits C7F, C31F and C37F).
>
> In September 2013, the claimant was referred for a consultative evaluation by the Administration, which was performed by Michael Geoghegan, D.O. The claimant weighed 223 pounds and her height was 65 inches. Dr. Geoghegan reported that the claimant had limited range of motion of cervical spine and dorsolumbar spine. He stated that the claimant had mild difficulty heel and toe walking, squatting, and hopping. Dr. Geoghegan noted that the claimant had 80% of grip strength remaining bilaterally as tested grossly (Exhibit C8F).

\* \* \*

In August 2014, the claimant reported to the emergency room due to abdominal pain. A CT of the abdomen/pelvis revealed diverticulosis. She was treated with medication (Exhibit C30F).

The claimant presented to the emergency room in October 2015, for abdominal pain for three days. Clinician noted that the claimant had left lower quadrant tenderness to palpation with no rebound, guarding or pulsatile mass. A computerized tomography (CT) of the abdomen and pelvis revealed no hydroneprhosis [sic] or urinary tract calculus and no evidence of bowel obstruction or an acute inflammatory process in the abdomen or pelvis. She was treated with Levsin and discharged in stable condition (Exhibit C36F).

Tama Abel M.D., a family practitioner, evaluated the claimant on July 16, 2016, per the request of the Administration. The claimant's weight was 246 pounds, height was 65 inches and BMI was 40.9. Dr. Abel noted that the claimant moved slowly performing all activities requested of her, complaining of back pain with most motions. She stated that the claimant demonstrated mild difficulty getting on and off the examination table, mild difficulty heel and toe walking, mild difficulty squatting and arising, moderate difficulty balancing, and moderate difficulty performing the tandem walk. Dr. Abel reported that the claimant complained of significant pain in her knees as she was able to very slowly assume a kneeling position and crawl slowly alongside the examiner. The claimant's dorsolumbar range of motion was 45 degrees for flexion, 10 degrees for extension, 20 degrees for right lateral flexion and 20 degrees for left lateral flexion. The claimant reported a sensation of tingling on the ulnar aspect of both forearms extending from the wrist to the elbow, a tingling sensation on the palm of the left hand and in the lower extremities along the lateral and posterior thigh, moving down the posterior calf to the ankle, extending further onto the left foot, sparing the great toe, with no altered sensation noted in the right foot. Dr. Abel stated that straight leg raising was positive in the seated position and was positive in the spine position at 45 degrees (Exhibit C34F).

PageID.59-60.

The ALJ performed an additional evaluation of the evidence while determining plaintiff's RFC at step three, stating in pertinent part:

The claimant's alleged severe pain, physical limitations, severe psychological symptoms and severe migraines are not consistent with or supported by the medical records. The claimant has not been to the emergency room or urgent care for migraines, neck or back pain, or psychological symptoms. In August 2014, the emergency room physician stated his suspicion was relatively high that the claimant may have some drug-seeking behavior because she was specifically

> requesting Dilaudid while attempting to indicate that she did not know the name (Exhibit 30F/1). In October 2015, the claimant denied having headaches (Exhibit C36F/22). In June 2016, the claimant reported very limited activities of daily living but in July 2016, stated she was independent with her activities of daily living (Exhibits C33Fand C34F). Dr. Abel noted that the claimant complained of significant pain in her knees, as she very slowly assumed the kneeling position and crawled slowly alongside her but her MRI of bilateral knees was unremarkable with no internal derangement and symmetric appearance of the knees (Exhibits C34F and C35F). The claimant never reported migraines to Dr. Abel (Exhibit C34F). The claimant very rarely mentioned migraines to her primary care physician, whom treated her migraines (Exhibits C31F and C37F). She has not been referred to a neurologist for her migraines. Dr. Abel reported that the claimant had essentially normal range of motion of cervical spine, normal range of bilateral shoulders, intact motor strength, and intact grip and pincher strength (Exhibit C34F). The claimant has a very sporadic work history, which is not indicative of someone real motivated to work (Exhibit C3D). The claimant has not been fully compliant with her medical treatment. It has been recommended by multiple medical sources that she stop smoking, which she has failed to do.
>
> Despite multiple visits and treatment over the relevant time period with a variety of treating doctors and other health care providers, the evidence does not support the severity and duration of the claimed limitations. While there may be some mention of treatment, symptoms, and limitations in the medical evidence of record, after a thorough review of all the medical evidence, I find a lack of any persuasive [sic] that such limitation were placed on her by any treating medical source, and the claimed restrictions are not supported by any restrictions noted by any qualified medial source in the file. It is reasonable to assume that had a treating medical source found it necessary for claimant to be limited to the extent she claims by her alleged symptoms, the medical evidence would clearly sate or reflect such a opinion. In the absence of such, great consideration is given to the only qualified medical expert opinions related to stated social security limitations or restrictions.

PageID.63-64.

The ALJ also addressed Dr. Geoghegan's 2013 opinion and Dr. Abel's 2016 opinion as follows:

> In September 2013, Dr. Geoghegan opined that the claimant had the ability to ambulate, climb stairs or be in a seated or standing position for uninterrupted moderate periods of time. Dr. Geoghegan stated that the claimant was able to lift, pull, push and carry with bilateral upper extremities and had minor decreased grp strength. He noted that the claimant retained the ability to use fingers for fine manipulation (Exhibit C8F). This opinion is explained by Dr. Geoghogan's [sic]

16

> report and consistent with the record as a whole. Therefore, I give this opinion great weight. I noted that the claimant requested a post-hearing medical expert review of the medical exhibits (Exhibit C10E). That request was based on the incorrect insertion [sic] that no approved medical source had reviewed the claimant's allegations. Dr. Geoghegan and Dr. Abel are approved medical sources who conducted objective examination of the claimants. After careful consideration of the request, I find that no additional medical opinions are necessary and decline the request for such.
>
> \* \* \*
>
> In July 2016, Dr. Abel opined that the claimant could perform a limited range of heavy work (Exhibit C34F). The evidence shows that the claimant is limited to light work due to her degenerative disc disease, obesity and irritable bowel syndrome. Therefore, I give this opinion partial weight.

PageID.64-65.

The ALJ noted that the Appeals Council vacated the prior hearing decision and remanded the case to further evaluate plaintiff's mental limitations, migraine headaches and a third party statement. PageID.65. The ALJ addressed the issues identified in the Appeals Council's order of remand as follows:

> The Appeals Council vacated the prior hearing decision and remanded the case to an Administrative Law Judge to: further evaluate the claimant's mental limitations, migraine headaches and third party statement. I find that the claimant has mild limitations in social functioning and moderate limitations in concentration, persistence or pace, as delineated above. Therefore, the claimant has no social limitations in her residual functional capacity but is limited to simple routine repetitive work with few, if any changes s [sic] in the work setting and cannot perform production rate paced work. The claimant's migraines affect her concentration and therefore limits her to simple routine repetitive work. I find that the claimant has migraines but not to the extent she alleges. The medical evidence does not support the claimant's allegations that she has three migraines per week, which last for hours and she needs to be away from light. In June 2013, Wayne Paul, the claimant's son, reported that the claimant had severe pain, significant physical limitations and severe psychological symptoms, including hiding in her room, crying and screaming (Exhibit C1E). Mr. Paul's allegations are not consistent with or supported by the medical reports, as delineated below. Therefore, I give Mr. Paul's third party function report little weight.

17

> The medical records establish that the claimant has anxiety disorder, affective disorder, degenerative disc disease of lumbar and cervical spine, migraines, obesity and irritable bowel syndrome. However, in June 2013, the claimant reported she performed a wide range of activities of daily living. She stated she had no side effects from her medication (Exhibit C4E). In September 2013, Dr. Geoghegon [sic] reported that the claimant had normal gait, had negative straight leg raise test, and did not use an assistive device for ambulation. He noted that the claimant had 80% of grip strength remaining bilaterally as tested grossly. The claimant was able to pick up a coin, fasten a button, and open a door with either hand (Exhibit C8F). Dr. Strang noted the claimant displayed good contact with reality, was pleasant and cooperative, and had nonimpaired motor activity. He stated that the claimant's thinking was coherent, thoughts were organized and associated to their topics, and speech was 100% intelligible and nonpressured. Dr. Strang reported that the claimant understood and explained proverbs well (Exhibit C9F). In April 2015, an MRI of the left hip was unremarkable. An MRI of bilateral knees were unremarkable (Exhibit C35F). In June 2016, Dr. Pekrul noted that the claimant was relatively independent in her daily functioning, gross receptive and expressive functions were intact, and thoughts were presented at an even pace and with reasonable clarity (Exhibit C33F). In July 2016, Dr. Abel stated that the claimant's gait was stable and within normal limits. She noted that an assistive device was not used for ambulation. Dr. Abel reported that the claimants affect, mood, dress and effort seemed appropriate, without obvious cognitive impairment. She noted that dexterity appeared unimpaired as she was able to pick up a dime, button clothing and tie a shoelace. Dr. Abel stated that the claimant had only mild difficulty with getting on and off the examination table, heel and toe walking, and squatting and arising. She reported that motor strength was intact (Exhibit C34F). The claimant ambulates without an assistive device. She has no psychotic symptoms and does not need a structured living arrangement. The claimant has had no back or neck surgery and none has been recommended.  According, I conclude that the claimant is able to perform a limited range of unskilled light work.

PageID.64-66.

Plaintiff's claim appears to be that the ALJ's decision is flawed because either Dr. Abel or the ALJ failed to address conditions identified by Dr. Thakur, which included fibromyalgia, psoriasis, migraines, IBS or urgency/frequency, "the impact of Plaintiff's fibromyalgia on her RFC," leg claudication, musculoskeletal problems, and joint swelling in the lower extremities.  Plaintiff's Brief at PageID.929.

As discussed, plaintiff did not mention fibromyalgia as an impairment to Dr. Abel. Rather, plaintiff identified the following complaints which she believed prevented her from working: "Manic depression; lower back problems; PTSD; stomach problems; memory problems; neck problems; back pain; recurrent scar tissue & cysts-left abdominal; ovary problems-had hysterectomy; colitis; diverticulitis; HBP; heart problems; COPD; comprehension problems; back-pinched nerves, bulging discs, arthritis; sleeping pro [sic]." PageID.787. In addition to examining plaintiff, Dr. Abel stated that she reviewed 50 pages of medical documentation and test results generated between December 6, 2012 and August 3, 2014. PageID.792. While plaintiff now contends that Dr. Abel failed to address some conditions identified by Dr. Thakur, plaintiff did not include all of her diagnoses to Dr. Abel as the "complaints" which prevented her from working. Furthermore, even if plaintiff had identified these additional diagnoses, the doctor's opinion was based on plaintiff's functional limitations exhibited during the examination, not on her diagnoses. *See Hill*, 560 Fed. Appx. at 551.

The ALJ set forth an extensive review of the plaintiff's medical history. Substantial evidence supports the ALJ's RFC determination that plaintiff can perform light work "except that the [she] can never climb ladders, ropes or scaffolds" and "[s]he can occasionally climb stairs or ramps, balance, stoop, kneel, crouch or crawl." PageID.62. With respect to her IBS, the ALJ noted that Dr. Thakur had treated the claimant conservatively with medication since August 2012, and concluded that she could perform light work with that condition. PageID.59, 65-66. Plaintiff gave no testimony about the other restrictions caused by her IBS (e.g., urgency or frequency). The fact that plaintiff has been diagnosed with IBS does not establish the extent of that condition or

the limitations caused by it. *See Hill*, 560 Fed. Appx. at 551. Accordingly, these claims of error should be denied.

### IV. Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **AFFIRMED**.

Entered:  February 6, 2019 /s/ Ray Kent
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).